IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-192-RM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **ROBERT REGER,** and
2.     **DAVID LYTLE,**

    Defendants.

---

### GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL DISCOVERY

---

The government respectfully submits this response in opposition to the Joint Motion to Compel Discovery filed by defendants Robert Reger and David Lytle (Dkt. No. 83) ("Def. Mot."). Defendants' motion is unclear as to what materials they are requesting and does not set forth any argument other than legal boilerplate in support of their assertion that they are entitled to more. In any event, as far as the government is aware, the only items defendants have requested that the government has not provided or agreed to provide consist of white papers submitted by Epsilon Data Management LLC ("Epsilon"), defendants' former employer, to the government in connection with efforts to resolve the government's investigation of Epsilon, as well as a "reverse proffer" presented by the government to Epsilon's counsel as part of that same process. Defendants are not entitled to these materials pursuant to Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), or any other authority, and defendants' motion should therefore be denied.

1

I.     **Background**

The indictment in this case, which was returned on June 9, 2021, charges that Robert Reger, David Lytle, and others agreed that they and their employer, Epsilon, would "sell consumer names and information to clients . . . that mailed fraudulent and deceptive mail pieces to consumers." Indictment, ¶ 13. They did so knowing that their clients were deceiving vast numbers of consumers, in order to increase Epsilon's data sales and, in turn, their own compensation. *Id.,* ¶¶ 2, 8.

In January 2021, Epsilon entered into a deferred prosecution agreement with the government to resolve charges arising from its own role in this scheme. *See United States v. Epsilon Data Management, LLC*, No. 21-cr-6-RM. During the discussions leading to that agreement, Epsilon provided advocacy pieces of a kind frequently termed "white papers" to the government. As is typical, those white papers contained factual assertions by Epsilon's counsel as well as attorney argument regarding Epsilon's potential liability and how the government should exercise its prosecutorial discretion. The government also provided a "reverse proffer" to Epsilon in which it cited evidence and made arguments concerning Epsilon's legal exposure.

As part of the discovery process, the government has produced over two million documents to defendants in this case. This includes the documents produced by Epsilon to the government in response to subpoenas the government served on Epsilon, and all documents or interviews referenced in the government's reverse proffer.[1] In order to comply with its

---

[1] In a voluminous e-discovery production like this case, technical or human errors are of course possible, but the government has swiftly addressed any issues that have come to light. For example, the defendants brought to the government's attention that a limited number of native documents were inadvertently omitted from the government's original productions, and the government recently identified four documents received in 2021 that were not included in existing productions. The government will continue to comply with its discovery obligations with respect to any such issues that arise.

2

obligations, and consistent with its liberal approach to discovery in this case, the government also shared with defendants factual assertions and statements made by Epsilon's counsel in connection with the government's investigation.  Specifically, on February 9, 2022, the government sent defendants a lengthy discovery letter containing factual assertions, information, and statements provided by Epsilon's counsel in connection with the government's investigation, including information and statements contained in Epsilon's white papers sent to the government.  *See* Dkt. 83-2.  The government's letter explained that the information was being produced pursuant to Rules 16(a) and 26.2 of the Federal Rules of Criminal Procedure; the Jencks Act, 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny; and *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny, but that the information being produced went well beyond those obligations.  *Id.* at 1.

## II.    **Defendants' Requests**

On March 29, 2022, defendants' counsel sent the government a list of materials defendants stated they were seeking.  That list included, *inter alia*, the items identified on pages 2 through 5 of defendants' motion.  As described by defendants in their motion, the remaining items fall into two categories: "Materials Referenced in the Epsilon Deferred Prosecution Agreement [DPA]," and "Information Referenced in the February 9, 2022, Discovery Letter."  Def. Mot. at 2-5.

The parties met and conferred regarding these requests on March 31, 2022.  The government agreed to produce certain of the materials defendants requested and to look into other requests.  The government also explained that the government does not possess certain of the items in the form the defendants purport to seek.  For example, defendants' requests include items such as a "[l]ist of investments in staffing and resources for [Epsilon's] legal and

3

compliance teams" and a "[l]ist of [Epsilon's] updated policies, procedures, and supervisory structures . . . ." Def. Mot. at 3.  While the defendants describe these lists as being referenced in the DPA, the DPA does not refer to such lists and the government is not in possession of lists other than the information already produced in the February 9, 2022 letter or in Epsilon compliance documents produced by the government to the defendants.  To the extent Epsilon produced documents pertaining to these topics, the government has produced them to defendants.

Following the parties' meet-and-confer, the government produced additional materials to defendants, including Epsilon's presentation to the government about prospective compliance efforts and Epsilon's compliance reports provided to the government pursuant to the DPA.  The government also agreed to request and produce certain other materials to the extent counsel for Epsilon is able to provide them to the government.  As far as the government is aware, this resolved any disputes between the parties except with respect to two items.  First, the government has not agreed to produce white papers provided to the government by Epsilon's counsel.  *See* Def. Mot. at 2 n.2.  Second, the government has not agreed to produce materials from settlement negotiations, specifically, the reverse proffer it made to Epsilon's counsel.  *Id.* at 5 n.12.  With respect to the white papers, the government has provided defendants with the factual information about the case that was included, and any documents referenced.[2]  With respect to the reverse proffer, the government has provided defendants with any documents or witness statements referenced in the reverse proffer.

---

[2] This does not include every publicly available document, which the defendants already have access to.  Additionally, the February 9, 2022 discovery letter did not include certain factual assertions by Epsilon concerning remedial actions it took regarding compliance, which the government did not view as subject to its disclosure obligations.  As noted above, however, the government has now provided defendants with that information.

4

Defendants' motion does not clearly articulate what it is seeking that the government has not produced or agreed to produce, and instead recites a long list of requests while acknowledging in footnotes that most of the requests are resolved. To the extent defendants suggest that the government has refused to produce materials other than the white papers and reverse proffer, those suggestions may be based on a misunderstanding of the materials that exist or that the government has agreed to produce.[3]

First, in footnote 10 of their motion, defendants state that "[b]ased on the parties' conferral the government will assert [that certain materials] relate to 'prospective compliance' and will not be produced." Def. Mot. at 4 n.10. Defendants describe those materials as being referenced in the February 9, 2022 discovery letter as "produced to the government" by Epsilon on May 31, 2019. *Id.* at 4. Contrary to defendants' characterization, the government's February 9, 2022 discovery letter did not indicate that Epsilon produced any such materials to the government on May 31, 2019. Instead, the discovery letter relayed certain factual statements Epsilon provided to the government on that date. To the extent materials produced by Epsilon to the government supported those statements, such materials would have been included in the materials the government had previously produced to defendants. The government has also now produced to defendants the presentation Epsilon provided to the government about its pre-DPA compliance measures. *See* Def. Mot. at 2 n.2.

---

[3] One additional error in defendants' motion bears correcting. In footnote 3 of their motion, defendants state that the government "is considering production" of certain materials supposedly referenced in the DPA. Def. Mot. at 3 n.3. As noted above and the government explained to defendants, while the DPA references measures like investments in staffing and resources and expanded employee training, this does not mean that Epsilon has created or provided the government with lists or descriptions of such investments or training. The government has already produced to defendants such materials that it possesses.

Second, in footnote 11 of their motion, defendants assert that "the government has produced the factual content" of certain assertions contained in the February 9, 2022 discovery letter, including that Epsilon conveyed evidence gathered from witness interviews, "but not 'notes' pertaining to the disclosures." Def. Mot. at 4 n.11. As the government explained to defendants, the assertions included in the discovery letter were made by Epsilon's counsel in a white paper. To the extent that defendants are also requesting notes taken by attorneys and other government personnel at settlement negotiation meetings, defendants fail to explain why notes from a settlement negotiation would be discoverable and the government does not agree they would be. The government has produced full memoranda of the Epsilon-conducted witness interviews and witness interviews conducted by the government.

Finally, on page 5 of their motion, defendants state that "materials produced to the government in response to a second grand jury subpoena Epsilon received in September of 2017 . . . relate to" various topics, and indicate that they are seeking those materials. Def. Mot. at 5. Defendants also state in footnote 12 that "the government has produced the factual content of these assertions but has not produced any additional materials pertaining to the disclosure." *Id.* at 5 n.12. These assertions misunderstand or mischaracterize what the government has received and produced. To be clear, the government sought to produce copies of all documents received from Epsilon pursuant to subpoenas, and also factual assertions made by the corporation. The "topics" defendants list do not describe items Epsilon produced in response to a subpoena— instead, they are factual assertions made by Epsilon's counsel in a white paper, and are not necessarily supported by materials in Epsilon's productions. *See* Dkt. No. 83-2 at 11-12 (relaying information from Epsilon white paper). Again, the government has provided the

factual assertions in Epsilon's white papers but has not agreed to produce the white papers themselves.

### III.   Legal Standards

Rule 16 permits a defendant to make a request for discovery that triggers the government's duty to turn over "items"—evidence in the form of "books, papers, documents, data, photographs, tangible objects, buildings or places"—or "portions of any of these items," that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E).  Such evidence is "material" under Rule 16 if it tends to "refute the Government's arguments that the defendant committed the crime charged." *United States v. Armstrong*, 517 U.S. 456, 462 (1996).  Thus, "[m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case." *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975). Rather, to be material, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Id.* at 763.  If the defendant makes a subsequent Rule 16 request for evidence that the government did not disclose, he "bears the burden to make a *prima facie* showing of materiality." *United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017).  "[T]he defendant must make a specific request for the item together with an explanation of how it will be helpful to the defense." *United States v. Jordan,* 316 F.3d 1215, 1250 (11th Cir. 2003) (internal quotation marks omitted).  "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).

The government must also produce exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972).

7

Specifically, *Brady* requires the government to disclose evidence favorable to the defendant and material to his guilt or punishment. *Brady*, 373 U.S. at 87. In determining whether undisclosed evidence is material, the court must determine whether the entire body of undisclosed evidence favorable to the defendant creates a "reasonable probability" of a different result at trial. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (The government has a "responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached."). To require disclosure pursuant to *Brady*, evidence must be either admissible or capable of leading to the discovery of admissible evidence. *See Madrid v. Wilson*, 590 F.3d 773, 778 (10th Cir. 2014).

### IV. Defendants Are Not Entitled to White Papers Provided by Epsilon to the Government or the Government's Reverse Proffer

Defendants' motion should be denied because the government's obligations under Rule 16, *Brady* and *Giglio* at most require the disclosure of facts and evidence referenced in those materials, which the government has already disclosed. The remainder of those documents consist of attorney argument, to which defendants are not entitled.

The argument section of defendants' brief consists entirely of boilerplate regarding Rule 16, *Brady*, *Giglio*, *Kyles*, and the Department of Justice's Justice Manual, without any effort to explain what defendants are seeking or why they are entitled to it. Def. Br. at 6-16. In any event, it is well established that "attorney argument . . . is not evidence." *Bird v. West Valley City*, 831 Fed. App'x 881, 891-92 (10th Cir. 2020); *see also United States v. Rios-Morales*, 878 F.3d 978, 989 (10th Cir. 2017) ("[T]he jury was properly instructed . . . that the attorneys' arguments were not evidence."). Even if attorney arguments could be considered evidence, moreover, the arguments in the white papers and reverse proffer—which are based on evidence defendants already possess—would not be material under Rule 16 because they do not enable the

defendants "significantly to alter the quantum of proof in [the defendants'] favor." *Ross*, 511 F.2d at 762; *see also United States v. Rigas*, 258 F. Supp. 2d 299, 306-307 (S.D.N.Y. Apr. 21, 2003) (rejecting argument that defendants were entitled to memoranda, presentations and reports created by law and accounting firms hired by their employer to investigate defendants' scheme, where the government had already agreed to produce any documents referred to or cited in those materials and any witness statements, and noting that documents are not "material" to the defense simply because they would be "useful" to the defendants). Certainly, defendants have not borne their burden of making a *prima facie* showing of materiality given that they have not articulated any basis for their supposed entitlement to the white papers or reverse proffer. *See Simpson*, 845 F.3d at 1056.

Nor are the attorney arguments contained in those materials subject to disclosure under *Brady* or *Giglio*. The government has "no obligation to disclose possible theories of the defense to a defendant." *United States v. Comosona*, 848 F.2d 1110, 1115 (10th Cir. 1988). Further, those arguments are not admissible or likely to lead to admissible evidence beyond the factual content the government has already disclosed. *See Banks v. Workman*, 692 F.3d 1133, 1144 (10th Cir. 2012) (state's failure to disclose note to defendant did not violate *Brady* where it was "hard to see how the [evidence at issue] would have tipped off [the defendant] to any leads of which he was not already aware").

Another judge in this district, Chief Judge Brimmer, recently addressed a similar request in *United States v. Penn*, Case No. 1:20-cr-00152-PAB, Dkt. No. 316 (D. Co. July 29, 2021). In *Penn*, as in this case, the government disclosed to the defendants new factual assertions contained in certain white papers, but not attorney arguments included in those submissions. *Id.* at 2. The defendants argued that they were entitled to the entirety of the white papers, which

were submitted to the government by counsel for chicken suppliers that, like the defendants, were the subject of the government's investigation.  Specifically, the defendants argued that white papers were material to the preparation of their defense because the white papers discussed "facts and arguments derived by these producers and their counsel that counter the government's legal theory."  *Id.* at 2 (citing Dkt. No. 231 at 5).  The court rejected the defendants' argument, holding that the government had complied with its obligations by producing new factual assertions to the defendants, and the defendants were not entitled to more.  *Id.* at 3.  Specifically, the court held that "the government has no obligation to produce attorney argument or discussions of the Filip factors [(prudential considerations that guide the Department of Justice in exercising its prosecutorial discretion with respect to corporations)]," because "[t]hose portions of the White Papers are not material."  *Id.*  The court should reach the same result here.

### V. Conclusion

For the foregoing reasons, defendants' motion should be denied.

Respectfully submitted this 29th day of April, 2022.

| | |
|---|---|
| COLE FINEGAN<br>United States Attorney | GUSTAV W. EYLER<br>Director<br>United States Department of Justice<br>Consumer Protection Branch |
| By: _/s/ Rebecca S. Weber_<br>Rebecca S. Weber<br>Assistant United States Attorneys<br>United States Attorney's Office<br>1801 California Street, Suite 1600<br>Denver, Colorado 80202<br>(303) 454-0332 (Weber)<br>Rebecca.Weber@usdoj.gov<br>Attorney for the United States | By: __/s/ Rachael Doud__<br>Alistair Reader<br>Ehren Reynolds<br>Rachael Doud<br>Trial Attorneys<br>Consumer Protection Branch<br>U.S. Department of Justice<br>450 5th Street, NW, Suite 6400<br>Washington, DC 20530<br>(202) 353-9930 (Reader) |

(202) 598-8339 (Reynolds)
(202) 451-7468 (Doud)
Alistair.F.Reader@usdoj.gov
Ehren.Reynolds@usdoj.gov
Rachael.Doud@usdoj.gov
Attorneys for the United States